IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KELLY CROLEY,** : | |
| : | |
| Plaintiff, : | Case No.: 2:23-cv-177 |
| : | |
| v. : | |
| : | |
| **JEWISH RESIDENTIAL SERVICES, INC.,** : | COMPLAINT IN CIVIL ACTION |
| : | |
| Defendant. : | |
| : | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Kelly Croley, by and through the undersigned counsel, J.P. Ward & Associates, LLC and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against the Defendant, Jewish Residential Services, of which the following is a statement:

## PARTIES

1. Plaintiff, Kelly Croley (hereinafter "Ms. Croley"), is an adult individual who currently resides at 115 Highlands Place, Pittsburgh, PA 15237.

2. Defendant, Jewish Residential Services, Inc. (hereinafter "JRS"), is a corporation with its principal place of business located at 2609 Murray Avenue, Suite 201, Pittsburgh, PA 15217.

## JURISDICTION AND VENUE

3. Jurisdiction is proper as Plaintiff brings this lawsuit under the Criminal Record History Information Act ("CHRIA"), 18 Pa.C.S. §9101 *et seq*. and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

5. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

6. On or about January 10, 2022, Ms. Croley was offered employment with JRS to begin on January 24, 2022.

7. Ms. Croley was offered a position as a Psychiatric Rehabilitation Specialist, a position for which she was highly qualified.

8. Following its offer to Ms. Croley, JRS conducted a criminal background check on Ms. Croley through the third-party consumer reporting agency CastleBranch Corporation (hereinafter "CastleBranch").

9. Upon information and belief, Ms. Croley has a criminal history of one arrest, which occurred on or about January 2018, and no convictions.

10. On or about January 20, 2022, Executive Director Nancy Gale (hereinafter "Ms. Gale") rescinded Ms. Croley's job offer by phone call in which she informed Ms. Croley that her offer of employment was being rescinded due to the results of the background check.

11. Ms. Croley inquired about the specific results of the background check, however, Ms. Gale provided no further details.

12. Rather, Ms. Gale responded by stating that "we [JRS] do not want people like you near our members."

13. Following the phone conversation, Ms. Gale sent Ms. Croley an e-mail which stated the following:

> Per our conversation earlier this afternoon, I am confirming that based on what we learned from your background check, I regret to inform you that we are withdrawing the offer of employment made to you on January 10, 2022.

14. Upon information and belief, JRS did not offer Ms. Croley a copy of the criminal background report or any further details regarding its withdrawal of her offer.

15. As such, JRS failed to provide Ms. Croley with adequate notice of her FCRA-protected rights, including her right to obtain a copy of the criminal background report within 60 days of her offer being withdrawn and her right to dispute the findings of the report.

16. Ms. Croley has suffered lost wages and benefits, as well as humiliation, inconvenience, severe mental distress, and embarrassment as a result of JRS' CHRIA and FCRA violations.

**JRS' VIOLATION OF PUBLIC POLICY AND THE
CRIMINAL HISTORY RECORD INFORMATION ACT**

17. The Office of Attorney General has identified that a purpose of CHRIA and similar Pennsylvania criminal history record legislation is to protect individuals with a criminal record from facing "unreasonable and unnecessary barriers" that "block their paths to employment, housing, and other basic human needs," a burden that is "felt throughout society." Pa. Off. of Att'y Gen., *Civil Rights Resources: Criminal History Records*, https://www.attorneygeneral.gov/protect-yourself/civil-rights/criminal-history-records/. An official statement by the Office of Attorney General provides that "while those who commit crimes must be held accountable and pay their debts to society, after those debts are paid, they should have the opportunity to lead secure and productive lives." Pa. Off. of Att'y Gen., *Civil Rights*

*Resources: Criminal History Records*, https://www.attorneygeneral.gov/protect-yourself/civil-rights/criminal-history-records/.

18. In 2018, the Pennsylvania General Assembly amended CHRIA through the "Clean Slate" Act (hereinafter "CSA"), 18 Pa. C.S.. Through this Act, the legislature asserts that the Commonwealth will provide a clean slate remedy by permitting certain criminal cases to be sealed from the public so they cannot be used by employers, landlords, and others.

19. By enacting the CSA, the Assembly establishes the legislature's concern for creating "a strong incentive for avoidance of recidivism by offenders," and providing "hope for the alleviation of the hardships of having a criminal record by offenders who are trying to rehabilitate themselves."

20. The Assembly sets forth these policies based on the following considerations:

(1) "Individuals with charges not leading to convictions may be inherently harmed by the maintenance of [their criminal] record and have a constitutional presumption of innocence."

(2) "After less violent individuals convicted of crimes have served their sentences and remained crime free long enough to demonstrate rehabilitation, the individuals' access to employment, housing, education and other necessities of life should be fully restored."

21. Furthermore, JRS' refusal to hire Ms. Croley violates the Constitution of the Commonwealth of Pennsylvania. Case law specifically states that denying employment to persons with criminal records violates the Pennsylvania Constitution's guarantee of the right to work. See *Nixon v. Com.*, 789 A.2d 376 (Pa. Commw. Ct. 2001) aff'd on other grounds, 576 Pa. 385, 839 A.2d 277 (2003).

22. Ms. Croley's prior arrest precluded her from being hired for the position of Psychiatric Rehabilitation Specialist. She was denied her rights guaranteed under the Constitution of the Commonwealth of Pennsylvania, including: the right to work, the right to engage in the common occupations of life, the right to earn a living in order to purchase property, the right to earn a living in order to marry and raise a family and the right to happiness.

23. JRS' decision to deny Ms. Croley employment also violates Pennsylvania's deeply ingrained public policy of trying to avoid unwarranted stigmatization and unreasonable restrictions upon former offenders and persons accused. Case law supports a finding that the refusal to hire her violates public policy. See *Warren Cnty. Human Servs. v. State Civil Serv. Comm'n*, 844 A.2d 70 (Pa. Commw. Ct. 2004) (finding that prohibiting the hiring of previously convicted applicants was unconstitutional as a violation of equal protection). JRS unreasonably stigmatized Ms. Croley because of her prior arrest, such that Ms. Croley was precluded from securing this position.

24. In January of 2018, four years prior to submitting an application for employment with JRS, Ms. Croley was arrested after police found illegal substances in the bathroom of the home of a friend she was visiting. The police visit came as a result of Ms. Croley contacting emergency services in an attempt to save the life of her friend who had become unresponsive from what Ms. Croley believed was an overdose. Without the necessary funds to dispute the charge, Ms. Croley agreed to a reduced charge of six months' probation in the Court's ARD program. This consists of Ms. Croley's first and only arrest, Ms. Croley was never convicted of a misdemeanor or felony. Ms. Croley was assured that all charges would be dismissed following the probationary period.

25. Ms. Croley is a one-time offender whose arrest arose out of circumstances in which she was attempting to save the life of another. Though she has already faced the full legal

consequences of her offense years ago, JRS' discrimination has created consequences that go beyond what has been prescribed by law. In turn, JRS has impeded her right to work and her ability to continue to improve the well-being of others through her work in social services, a field that already has a shortage of workers. JRS' refusal to employ Ms. Croley is the very conduct the Pennsylvania legislature is working to eliminate through laws such as CHRIA and the CSA.

26. As of 2015, nearly three million Pennsylvania citizens have a criminal record. Accordingly, Pennsylvania legislature has made clear that it is in the best interest of the Commonwealth to rehabilitate and reintegrate individuals who have already paid the price of their offenses and are striving to better themselves, the lives of their families, their communities, and society at large by gaining purposeful employment.

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE
## CRIMINAL HISTORY RECORDS INFORMATION ACT,
## 18 PA C.S.A. § 9101 *et seq*.

27. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length therein.

28. In Pennsylvania, the acceptable use of criminal records is covered by the Criminal History Record Information Act ("CHRIA"), 18 Pa.C.S. § 9101 *et seq*.

29. Specifically, the use of criminal records for employment decisions are governed by 18 Pa C.S.A. §9125(a)-(c).

30. Under 18 Pa.C.S. § 9125(a), "whenever an employer is in receipt of information which is part of an employment applicant's criminal history record information file, it may use that information for the purpose of deciding whether or not to hire the applicant, only in accordance with this section."

31. Further, 18 Pa.C.S. § 9125(b) states that "felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied."

32. Therefore, employers are allowed to consider, when relevant in hiring decisions, convictions but not arrests. *Tilson v. School Dist. Of Phila.*, Civ. A. No. 89-1923, 1990 U.S. Dist. LEXIS 8964, 1990 WL 98932, at *4 (E.D. Pa. July 13, 1990), *aff'd*, 932 F.2d 961 (3d Cir. 1991).

33. After receiving a report from CastleBranch regarding her past criminal record, JRS rescinded Ms. Croley's offer of employment.

34. Ms. Croley's criminal record consists of one arrest and no convictions.

35. Therefore, under 18 Pa.C.S. § 9125, JRS was prohibited from considering Ms. Croley's arrest in its hiring decision.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant and award her actual, real and statutory damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, and reasonable costs of litigation and attorney's fees.

## COUNT II
### VIOLATION OF THE REQUIREMENTS OF
### THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681

36. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

37. The Fair Credit Reporting Act ("FCRA") requires an employer taking an adverse action against an applicant based on a consumer report to provide that applicant with oral, written, or electronic notice of the applicant's right to obtain a free copy of the report from the consumer reporting agency within 60 days of the adverse action. 15 U.S.C. § 1681(m) (a)(4)(A).

38. The FCRA also requires an employer taking adverse action against an applicant based on a consumer report to provide that applicant with notice of the applicant's right to dispute the findings of the report. 15 U.S.C. § 1681(m) (a)(4)(B).

39. Upon information and belief, JRS failed to adequately notify Ms. Croley of her right to request a free copy of her criminal background report within 60 days of any adverse action taken against her. Ms. Croley was also not provided a copy upon her offer being rescinded.

40. Ms. Croley, upon information and belief, was also never notified of her right to dispute the information in the criminal background report JRS used as the basis for its hiring decision.

41. Therefore, JRS violated 15 U.S.C. § 1681(m) of the FCRA.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in her favor and against Defendant and award her actual and statutory damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, and reasonable costs of litigation and attorney's fees.

**JURY TRIAL DEMANDED.**

                                              Respectfully Submitted,

                                              **J.P. WARD & ASSOCIATES, LLC**

Date: February 3, 2023                      By: _/s/ Joshua P. Ward, Esq._

                                                    Joshua P. Ward (Pa I.D. No. 320347)

                                                     J.P. Ward & Associates, LLC
                                                   The Rubicon Building
                                                   201 South Highland Avenue
                                                   Suite 201
                                                   Pittsburgh, PA 15206

                                                   Counsel for Plaintiff