# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY CROLEY, | ) |
| Plaintiff, | ) No. 2:23-cv-177 |
| v. | ) |
| JEWISH RESIDENTIAL SERVICES, INC., | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

**J. Nicholas Ranjan, United States District Judge**

On January 10, 2022, Defendant Jewish Residential Services, Inc. made Plaintiff Kelly Croley a job offer. Ten days later, it rescinded it, after a third-party background check revealed that Ms. Croley had convictions for two state-court summary offenses, and a subsequent internet search by JRS turned up some other things that "[didn't] smell right." ECF 48-22. Ms. Croley thought this violated the law, and so sued JRS here, alleging a violation of the Pennsylvania Criminal History Record Information Act (CHRIA), and a violation of the federal Fair Credit Reporting Act (FCRA). ECF 1.

JRS now moves for summary judgment on both claims, and the motion is fully briefed. ECF 46, ECF 47, ECF 55. After careful consideration, and applying the familiar summary-judgment standard, the Court will grant in part and deny in part the motion. Specifically, the Court will enter judgment in favor of JRS on the CHRIA claim because the information that JRS considered in rescinding Ms. Croley's offer was not prohibited "criminal history record information," as defined under CHRIA. But the Court will allow the FCRA claim to proceed; JRS's only challenge to that

claim is lack of standing, and the Court concludes below that Ms. Croley has standing to bring her FRCA claim.

## BACKGROUND

Construing the facts here in the light most favorable to Ms. Croley, JRS is a Pittsburgh non-profit that provides psychiatric services to people with mental-health disorders. ECF 48-2, pp. 337:19-340:18. In December 2021, Ms. Croley applied to JRS for a client-facing position. *Id.* p. 338:14-24; ECF 48-12. After a series of interviews, on January 10, 2022, JRS offered Ms. Croley the job, contingent on the results of a pending background check. ECF 48-16.

The background check was conducted by a third-party company (CastleBranch), and CastleBranch's report arrived a few days later. It included a Pennsylvania State Police report, which stated that Ms. Croley has "no criminal record in Pennsylvania[,]" but it also identified, in another section, a summary "bad checks" conviction from February 2005, and a summary disorderly conduct guilty plea from April 2018. ECF 48-18, pp. 1-3, 8-9.

That criminal history—which Ms. Croley had not disclosed—prompted JRS's office manager to do some online sleuthing. ECF 48-17, pp. 51:12-53:5. Her internet research turned up four items: (1) a December 2017, newspaper article where Ms. Croley claimed that she was robbed while driving for a rideshare company, ECF 48-5; (2) a December 2017, crowdfunding campaign related to the robbery, ECF 48-7; (3) a February 2018, newspaper article (published in the "Butler Eagle"), explaining that Ms. Croley was charged with disorderly conduct and drug-related offenses, ECF 48-9; and (4) a May 2018, newspaper article (also in the Butler Eagle), providing details about Ms. Croley's drug-related charges and their disposition. ECF 48-10.

On January 20, 2022, the office manager emailed these items to JRS's Executive Director, Nancy Gale, who was solely responsible for hiring Ms. Croley. ECF 48-2, p. 12:6-18; ECF 48-22. Ms. Gale then called Ms. Croley that afternoon and

told her that JRS was rescinding the offer because of information it learned during the background check.  ECF 48-22; ECF 48-2, pp. 46:8-23, 80:1-9, 324:7-24; ECF 48-1, pp. 166:19-169:3.[1]  Ms. Gale confirmed JRS's decision in an email to Ms. Croley later that day.  ECF 48-23.

## DISCUSSION & ANALYSIS

### I.     The Court will dismiss Ms. Croley's CHRIA claim.

CHRIA is a Pennsylvania statute, which, in part, "prohibits employers from arbitrarily relying on a job applicant's criminal history record information during the hiring process."  *Delay v. Dollar Energy Fund*, No. 21-1037, 2023 WL 3173985, at *9 (W.D. Pa. May 1, 2023) (Dodge, M.J.) (cleaned up), *aff'd*, No. 23-1846, 2023 WL 6937404 (3d Cir. Oct. 20, 2023).

At issue here is Section 9125 of CHRIA, "use of records for employment[.]"  18 Pa. C.S. § 9125.  It provides:

> **(a) General rule.**--Whenever an employer is in receipt of information which is part of an employment applicant's criminal history record information file, it may use that information for the purpose of deciding whether or not to hire the applicant, only in accordance with this section.
>
> **(b) Use of information.**--Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied.
>
> **(c) Notice.**--The employer shall notify in writing the applicant if the decision not to hire the applicant is based in whole or in part on criminal history record information.

*Id.*

Ms. Croley asserts that JRS's consideration of her criminal history—

---

[1] The exact weight Ms. Gale assigned to the items of information is unclear, but she did consider, in some capacity, the summary "bad checks" conviction, the robbery, the crowdfunding campaign, and the Butler Eagle articles.  ECF 48-2, pp. 127:16-128:11, 141:8-142:4.

specifically, the summary offenses appearing in the CastleBranch report, and her 2018 arrest detailed in the Butler Eagle articles—violates Section 9125. ECF 55, pp. 16, 40.[2] On careful review, the Court disagrees, as there is no evidence that this information qualifies as "criminal history record information" under the statute.

CHRIA is a narrow statute. It prohibits an arbitrary employment decision based only on "criminal history record information." 18 Pa. C.S. § 9125. It then defines "criminal history record information" as: (i) "[i]nformation collected by criminal justice agencies"[3]; (ii) "arising from the initiation of a criminal proceeding,"—*e.g.* such as copies of indictments and judgments. *Id.* § 9102 ("identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom").

But even then, the statute exempts swaths of information obtained through certain sources. For example, if the information is from a Pennsylvania court file, it's exempt. 18 Pa. C.S. § 9104(a)-(b). If it's from a non-criminal justice agency, it's (usually) exempt. *Id.* § 9104(e). Further, the statute (at least up until very recently) does not cover consideration of expunged convictions; so, if an employer comes across information pertaining to expunged convictions (from any source), it is free to consider that information in making an employment decision. *See Foxworth v. Pa. State Police*, 402 F. Supp. 2d 523, 545 n.21 (E.D. Pa. 2005) ("[T]he statute simply does not apply to the case at hand . . . because the statute relates to *criminal history record information*, which [the plaintiff] does not have precisely because his record was expunged."), *aff'd*, 228 F. App'x 151 (3d Cir. 2007).

---

[2] She doesn't challenge the consideration of the robbery article or crowdfunding campaign as violating CHRIA.

[3] The statute also defines "[c]riminal justice agencies" as courts and other government agencies with a criminal-justice function (*e.g.*, police departments, detention facilities, probation agencies, district attorneys). 18 Pa C.S. § 9102.

All of this is important, because, "an employer is not subject to liability under CHRIA when it learns of an applicant's past criminal history through means other than 'criminal history record information.'" *Azadpour v. AMCS Grp., Inc.*, No. 19-1968, 2020 WL 564755, at *4 (E.D. Pa. Feb. 5, 2020); *see also* 18 Pa. C.S. § 9125(a).

Against this backdrop, there are three fatal problems with Ms. Croley's CHRIA claim.

First, there is no evidence as to where the summary-offense information came from, including whether CastleBranch pulled information from a prohibited source. The report itself just lists a summary of basic information about the offenses, which would be reflective of an online state-court docket search and which is a permissible source under CHRIA. 18 Pa. C.S. § 9104(a)(2) (exempting any "documents, records or indices prepared or maintained by or filed in any court of this Commonwealth, including but not limited to the minor judiciary"); § 9104(b) (deeming "court dockets" as public records). Ms. Croley hasn't proffered any evidence on the source of the information in the CastleBranch report to get to a jury on this claim.

Second, the same goes for the news articles. That information likely falls under "press releases," which are exempt. 18 Pa. C.S. § 9104(a)-(b). But even if an article could be construed as something different than a press release, the Butler Eagle is not a "criminal justice agency." Under Section 9104(e), "[c]riminal history record information" doesn't include "[i]nformation collected by noncriminal justice agencies and individuals[,]" if that information is "from the sources identified in [Section 9104, like dockets, police blotters, and press releases.]" 18 Pa. C.S. § 9104(e). Arguably, "criminal history record information" *could* include information collected by the Butler Eagle, if the newspaper collected it from sources other than those exempted by Section 9104. Yet the result is the same as with the CastleBranch report; because Ms. Croley doesn't point the Court to any evidence that the Butler Eagle obtained

this information from non-exempt sources, there isn't enough evidence to get to a jury on this claim.

Third, the summary-offense information concerns expunged offenses, and information about expunged offenses is also not covered under CHRIA.

CHRIA directs the expungement of "[c]riminal history record information[,]" 18 Pa. C.S. § 9122(a), including summary offenses. *Id.* § 9122(b)(3). And it defines "expunge" as "[t]o remove information so that there is no trace or indication that such information existed[.]" *Id.* § 9102.

Effectively, then, expunged "criminal history record information" is not "criminal history record information" at all. And since Section 9125 only governs use of "information which is part of an employment applicant's criminal history record information file[,]" 18 Pa. C.S. § 9125(a), expunged criminal history isn't protected. *See Foxworth*, 402 F. Supp. 2d at 545 n.21; *see also Guzzo v. Allen Distrib.*, 479 F. Supp. 3d 91, 95 (M.D. Pa. 2020) ("[Section] 9125 only concerns employers who receive information that is actually within the applicant's criminal history file. It thus . . . excludes . . . expunged convictions.").[4]

Based on the Court's review of the record and Ms. Croley's arguments and deposition testimony, both summary offenses were expunged; and there is nothing in the record creating a dispute of fact over that. ECF 48-1, p. 136:11-24 ("I don't have a criminal history. It was expunged, it was dismissed. I was never convicted of

---

[4] Ms. Croley counters by relying on a new provision in CHRIA that was recently passed. ECF 55, p. 35 (citing CHRIA's new directive at 18 Pa. C.S. § 9122.5(a.1) that "criminal history record information that has been expunged . . . may not be used by any individual or noncriminal justice agency for employment . . . purposes."). But there is nothing to support the idea that that provision applies retroactively. *See* 2023 Pa. Legis. Serv. Act 2023-36 (H.B. 689) (amendment passed on December 14, 2023, and stated it would "take effect in 60 days"); *cf. R.M. v. J.S.*, 20 A.3d 496, 513 n.15 (Pa. Super. Ct. 2011) ("The Legislature did not indicate that the Act was to be applied retroactively. It is therefore inapplicable to the case at bar." (cleaned up)).

anything."); ECF 55, p. 31 (Ms. Croley "entered a plea to all of her outstanding charges . . . the [2018 drug] charge was disposed of pursuant to an Accelerated Rehabilitative Disposition which would expunge all her charges"); ECF 48-18, p. 3 (Pennsylvania State Police report returning no criminal history).

Accordingly, because both the summary offenses and the Butler Eagle articles aren't protected by Section 9125, the Court will grant summary judgment for JRS on Ms. Croley's CHRIA claim.[5]

## II. The Court will not dismiss Ms. Croley's FCRA claim.

Ms. Croley has also brought a separate FCRA claim, essentially asserting that JRS violated FCRA by not informing her of her right to obtain a free copy of the CastleBranch report and to dispute it. ECF 1, ¶¶ 36-41; 15 U.S.C. § 1681m(a)(4).[6] JRS doesn't dispute that it failed to do this, but instead argues that because the CastleBranch report correctly reported Ms. Croley's criminal history, Ms. Croley doesn't have Article III standing to bring her FCRA claim. ECF 47, pp. 17-20. The Court disagrees.

---

[5] JRS makes two additional arguments. First, it argues that Section 9125 of CHRIA doesn't prohibit consideration of summary offenses, as it only refers to felonies and misdemeanors. ECF 47, pp. 13-14. The Court disagrees. Section 9125 plainly prohibits all criminal history record information, but then carves out felonies and misdemeanors. 18 Pa. C.S. § 9125(a)-(b). It doesn't carve out summary offenses. So summary-offense information is not subject to that general rule's exception. Second, JRS argues that CHRIA allows it to consider criminal history record information if it bears on "suitability of employment." ECF 47, p. 17. The Court doesn't reach that argument here.

[6] FCRA refers to "consumer reports" and "consumer reporting agencies." "Criminal background checks are 'consumer reports,' *i.e.*, written communication that bears on a consumer's . . . character, general reputation, personal characteristics, or mode of living and is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for employment purposes[.]" *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 318 (3d Cir. 2018) (quoting 15 U.S.C. § 1681a(d)(1) (cleaned up)). And as an entity responsible for assembling background checks, CastleBranch is a consumer reporting agency. 15 U.S.C. § 1681a(f). JRS doesn't dispute this.

"Article III standing require[s] a plaintiff to have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020) (cleaned up). JRS challenges the first element, specifically, that Ms. Croley suffered a "concrete" injury-in-fact. ECF 47, pp. 17-20.

Ms. Croley's alleged FCRA injuries—JRS's failure to notify her of her rights to request a free copy of the CastleBranch report from CastleBranch, and to dispute its contents, (a Section 1681m FCRA claim), ECF 1, ¶¶ 37-38—are so-called intangible "informational" injuries, as they turn on the nondisclosure of information. *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 144-45 (3d Cir. 2023).[7]

In the Third Circuit, to establish concreteness of informational injuries, "a plaintiff . . . must show (1) the omission of information to which she claims entitlement, (2) adverse effects that flow from the omission, and (3) a nexus to the concrete interest Congress intended to protect by requiring disclosure of the information." *George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226, 236 (3d Cir. 2024) (cleaned up). Ms. Croley has done so.

First, "FCRA creates a 'substantive entitlement' to the disclosure of source information[.]" *Kelly v. RealPage Inc.*, 47 F.4th 202, 214 (3d Cir. 2022); 15 U.S.C. § 1681m(a)(4) (requiring a person taking an adverse action based on information in a consumer report to notify the consumer of their right to obtain a free copy of the

---

[7] The parties discuss Ms. Croley's FCRA claim as relating to JRS's failure to provide Ms. Croley with a copy of the report. ECF 47, p. 17; ECF 55, p. 43. That is a claim specifically under Section 1681b(3)(A), and is not explicitly pled in the complaint. While Ms. Croley's complaint implies such a claim, ECF 1, ¶ 39, it only explicitly alleges a violation of Section 1681m. *Id.* ¶ 41. So a Section 1681b(3)(A) claim, requiring an employer to provide a copy, isn't technically at issue here. Regardless, both claims are largely the same for purposes of the standing analysis.

consumer report and to dispute the contents of the report).  JRS failed to do as required.

Second, JRS's failure had "adverse effects."  Ms. Croley didn't understand what was in the background report, as she believed her criminal history was expunged.  ECF 48-1, pp. 167:9-15, 168:22-169:3.  And without a notification that she was entitled to a copy of the report from CastleBranch and to dispute "the accuracy or completeness" of the information—such as why it included expunged offenses, or that it needed more context for those offenses—she was "unable to . . . ensure fair and accurate reporting of [her] . . . information."  *Kelly*, 47 F.4th at 215 (citation omitted); *see also Carr v. Regul. Datacorp, Inc.*, No. 22-2139, 2024 WL 3937562, at *3 (E.D. Pa. Aug. 26, 2024) ("Without disclosure of [] information [in a consumer report], Plaintiff was not privy to information in his file and was unable to ensure the fair and accurate reporting of his credit information.").  Indeed, Ms. Croley's deposition testimony reflects some dispute over how the bad-checks offense was reported, which she could have explained in more detail had she been able to dispute the report.  ECF 48-1, pp. 24:5-27:8, 125:10-126:11, 136:11-24.

Third, JRS's omission "frustrat[ed] Congress's goal of empowering consumers to correct inaccurate information in their credit files and preventing them from being unjustly damaged because of inaccurate or arbitrary information in their credit reports[.]"  *Kelly*, 47 F.4th at 215 (cleaned up); *see also Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (FCRA's goals include addressing a consumer's inability "to know he is being damaged by an adverse credit report, the lack of access to the information in his file, [and] the difficulty in correcting inaccurate information[.]" (cleaned up)); 15 U.S.C. § 1681.

The Court thus finds that Ms. Croley has suffered a concrete injury-in-fact, and the other elements of the three-part standing test (which JRS doesn't challenge)

are otherwise met.  So the Court will deny JRS's motion for summary judgment on Ms. Croley's FCRA claim.

*   *   *

Accordingly, JRS's motion for summary judgment (ECF 46) is **GRANTED IN PART** and **DENIED IN PART**.  The Court enters judgment in favor of JRS on the CHRIA claim (Count I), but denies summary judgment as to the FCRA claim (Count II).

Dated: April 17, 2025                    BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge